IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRAYVON M. TRAWICK, ) | |
| ) | |
| Claimant, ) | No. 14-cv-2022 |
| ) | |
| v. ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Trayvon M. Trawick ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's application for Child Insurance Benefits ("CIB") under Title II and Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6.]

Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 15.] The Commissioner has done the same. [ECF No. 23.] For the following reasons, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. PROCEDURAL HISTORY

Claimant filed an application for CIB on December 23, 2010, and an application for SSI on December 7, 2010. (R. 188-194, 120.) In both applications, Claimant alleged an onset date

of May 1, 2008. *Id.* Claimant was 21 years-old at the time of his applications. (R. 199.) He has a high school diploma and has never worked. (R. 204-205.) The Social Security Administration denied the applications initially on March 10, 2011, and on reconsideration on September 8, 2011. (R. 119-122.) On October 26, 2011, Claimant requested a hearing. (R. 147-48.) An Administrative Law Judge (the "ALJ") held the hearing on August 7, 2012. (R. 53-118.) Claimant, who was represented by counsel, appeared and testified at the hearing. *Id.* A Medical Expert (the "ME") and a Vocational Expert (the "VE") also testified. *Id.*

On September 25, 2012, the ALJ issued a written decision denying Claimant's applications for benefits. (R. 25-45.) The ALJ went through the five-step sequential evaluation process required by 20 C.F.R. §§ 404.1520, 416.902(a) and determined at step one that Claimant had not engaged in any substantial gainful activity ("SGA") since his onset date. (R. 30.) At step two, the ALJ determined that Claimant had the severe impairments of major depressive disorder recurrent with psychotic features, bipolar disorder, post-traumatic stress disorder, and a learning disorder. *Id.* At step three, the ALJ found that Claimant did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (R. 39.)

At step four, the ALJ found that Claimant did not have any past relevant work. (R. 44.) The ALJ determined that Claimant had the residual functional capacity ("RFC") to work without exertional limitation. (R. 43.) Furthermore, he could: maintain concentration leading to on-task productivity for 90% of the workday; perform simple, routine tasks; work without ordinary stress; tolerate occasional interaction with co-workers and supervisors; work without engaging in

2

joint tasks; work without public contact; feed, dress, and bathe himself; and engage in personal hygiene. *Id.* The ALJ also determined Claimant would only miss six days of work per year. *Id.*

At step five, the ALJ found Claimant could perform jobs existing in significant numbers in the national economy. (R. 44.) Specifically, the ALJ found that Claimant could perform work as a dishwasher, janitor, and material handler. (R. 45.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. *Id.* On September 25, 2012, Claimant sought review of the ALJ's decision. *See* R. 2. On November 13, 2013, the Social Security Appeals Council denied the request. *Id.* That denial made the ALJ's opinion into the final decision of the Commissioner. *Id. See also Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000). Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's

3

decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

Claimant contends that several flaws in the ALJ's analysis mandate remand. First, he argues that the ALJ erred when evaluating the medical opinion of his treating physician, Dr. Luckose Luke. Second, Claimant asserts that the ALJ's RFC assessment was inadequate. Third, Claimant claims that the ALJ's credibility assessment was unreasonable. The Court finds that the ALJ committed the first two errors, and thus need not address the third.

### A. The ALJ Failed To Properly Consider The Opinion Of Claimant's Treating Physician.

Dr. Luckose Luke was one of Claimant's treating physicians. Dr. Luke filled out a Mental Impairment Questionnaire in which he opined that Claimant had many serious limitations. (R. 419-424.) For instance, Dr. Luke stated that Claimant was seriously limited in: (1) maintaining regular attendance and being punctual within customary tolerances, (2) sustaining an ordinary routine without special supervision, and (3) working in coordination or proximity to others without being unduly distracted. (R. 421.) The doctor also noted serious

4

limitations in eleven other abilities and aptitudes. (R. 421-422.) Finally, Dr. Luke determined that Claimant would miss about three workdays per month. (R. 424.)

The ALJ accorded Dr. Luke's opinion slight weight. (R. 38.) There were three reasons offered by the ALJ to support this determination. *Id.*; *see also* Defendant's Memorandum in Support of Motion for Summary Judgment, ECF No. 23, at 6. First, Dr. Luke's opinion was rendered after only two treatment sessions. (R. 38.) Second, Dr. Luke's opinion was internally inconsistent. *Id.* Third, Dr. Luke's opinion was inconsistent with his later treatment notes. *Id.*

The length of Dr. Luke's treatment relationship is indeed a relevant factor in determining the weight to give his opinion. *See Jelinek v. Astrue*, 662 F.3d 805, 811-12 (7th Cir. 2011); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). But the ALJ's other two proffered rationales are not good reasons to discount Dr. Luke's opinion.

The ALJ noted that Dr. Luke found Claimant to be moderately limited in his ability to maintain concentration, persistence and pace, and in his social functioning. (R. 38.) The ALJ also reported that Dr. Luke found Claimant to be seriously limited in his ability to sustain an ordinary routine, accept instructions, and worth with others. *Id.* The ALJ asserted in a conclusory manner that these opinions were inconsistent with each other. But that is not necessarily the case. Most fundamentally, these "check box" opinions came from different portions of the form that used different measurement terminology. In the portion dealing with concentration, persistence, pace, and social function, the form offered the following choices: "None[/]Mild," "Moderate," "Marked," and "Extreme." (R. 423.) In the portion dealing with routine, instructions, and collaboration, the form offered entirely different choices: "Unlimited or Very Good," "Limited but satisfactory," "Seriously limited," "Unable to meet competitive standard," and "No useful ability to function." (R. 421-422.) The form provides no basis for

5

comparing the two different ranking systems. The ALJ's decision gives no indication of how he figured out that "moderate" and "seriously limited" were inconsistent other than that the words used are different. The Commissioner has not offered any logical way to compare these two levels of severity.

Even if the ALJ had adequately explained how these two rankings indicated functionally different severities, the ALJ's analysis still would have been deficient. After all, the findings that the ALJ said were inconsistent dealt with different abilities that are not necessarily correlated. For instance, a person's social functioning is not perfectly correlated with her ability to sustain an ordinary routine. Indeed, these are quite different abilities. Moreover, her ability to function socially, appreciating the broadness of that term, could be more or less limited than her ability to accept instructions, "work in coordination or proximity to others without being unduly distracted," or "get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes." (R. 421.) The latter three are all limited categories which even may be subparts of social functioning, meaning that they are correlated with it to some extent. But they are clearly different from and narrower than social functioning. That means the strength or weakness of one's ability to function socially in other ways – that is other than accepting instructions and working with coworkers – could lead to a divergence between one's ability in the broader and narrower measures. The same is true of one's ability to maintain concentration, persistence, and pace.

Because the ALJ did not build a logical bridge showing that Dr. Luke's opinion was internally inconsistent, the ALJ should not have relied on such supposed inconsistency to discount Dr. Luke's opinion.

The ALJ's final justification for the slight weight determination was that Dr. Luke's later treatment notes contradicted his opinion, which was rendered on August, 11, 2011. The ALJ does not explain how they were inconsistent; he simply asserts in one sentence that they were. Likewise, the Commissioner's brief is devoid of any substantive discussion about this supposed inconsistency.[1] The ALJ's characterization of the later notes simply is not nuanced enough. Dr. Luke did at times note improvements. But he also continued to document problems. For instance, on November 1, 2011, Dr. Luke described Claimant as guarded, paranoid, and deluded. (R. 443.) On April 10, 2012, Dr. Luke reported that Claimant was depressed, paranoid, and hearing voices. (R. 441.) In May, Claimant was still hearing voices. *Id.* The Court need not now determine whether Dr. Luke's later notes were consistent with his opinion. It is enough at this time for the Court to find that the notes are not clearly inconsistent, and that the ALJ did not build a logical bridge from the notes to an inconsistency that justifies giving less weight to Dr. Luke's opinion.

In summary, the ALJ provided three reasons for discounting Dr. Luke's opinion. Only one of these – the two treatment sessions – was a potentially good reason that was adequately explained. And even that reason is at least somewhat suspect because Dr. Luke continued to treat Claimant after he rendered his opinion and the ALJ, if he believed it was important, could have asked Claimant's lawyer to obtain an updated opinion. Further, the ALJ's other two rationales were not good reasons. The Court cannot determine how each of the three reasons impacted the ALJ's weight determination. That means the case must be remanded.

---

[1] The Commissioner only addresses this issue by incorrectly claiming that Claimant conceded that the later notes showed improvement. [ECF No. 23, at 7.] But Claimant does not make any such concession. Instead, in the portion of Claimant's brief cited by the Commissioner, Claimant noted that the ALJ found the notes inconsistent and explained why Claimant would still win "[e]ven if this Court agrees with the ALJ . . . ." [ECF No. 15, at 10.] On that same page, though, Claimant cited a few treatment notes and described what in them showed that Dr. Luke's opinion was consistent with the notes.

## B. The ALJ Erred in Determining Claimant's RFC.

The ALJ concluded that Claimant would miss only six workdays per year and that he would be able to "maintain concentrating leading to on task productivity 90% of the workday." (R. 43.) The ALJ did not explain how he determined Claimant would miss only six days of work. Instead, the ALJ rejected the only medical opinion in the record that addressed how many days Claimant would miss – Dr. Luke's – and substituted his own judgment. The Commissioner also fails to identify any evidence that would support this conclusion. Instead, the Commissioner incorrectly asserts that Claimant failed to "point to any evidence that undermined the ALJ's finding regarding . . . his absences from work." [ECF No. 23, at 4.] That is just wrong because, as explained above, Dr. Luke's opinion is directly contrary to the ALJ's determination.

The ALJ's 90% finding was similarly flawed. Again, the ALJ did not explain how he reached this number. The Commissioner defends this number by listing a lot of unrelated facts. [ECF No. 23, at 4.] But neither the ALJ nor the Commissioner ever explain how those facts relate to the percentage of the workday that Claimant can concentrate. There is actually some evidence in the record that may support the 90% number. Dr. Luke opined that, at least 90% of the time, Claimant would be able to maintain attention for two-hour and to complete a normal workday and workweek without interruptions from psychologically based symptoms. (R. 421.) Of course, Dr. Luke's opinion is nuanced, and the Court is not now saying that his opinion would support the ALJ's finding. That is because this Court cannot affirm a decision based on a reason not mentioned by the ALJ. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). Again, the ALJ simply failed to build the necessary logical bridge between the evidence and his 90% finding.

On remand, the ALJ also should explain how a limitation to only simple and routine tasks adequately accounts for Claimant's moderate limitations in concentration, persistence, and pace.

*See Willis v. Colvin*, 2016 WL 270234, at *3-4 (N.D. Ill. Jan. 21, 2016); *Webb v. Colvin*, 2015 WL 9474289, at *2-5 (N.D. Ill. Dec. 28, 2015).

The Court stresses that this opinion should not be construed as an indication that the Court believes that Claimant was disabled since May 1, 2008, or that he should be awarded disability benefits. To the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 15] is granted and the Commissioner's motion for summary judgment [ECF No. 23] is denied. The matter is remanded to the Social Security Administration for further proceedings consistent with this opinion.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 1, 2016